DAUGHERTY *v.* SOUTHERN COTTON OIL COMPANY.

Opinion delivered April 14, 1919.

1. NUISANCE—FACTORY WHISTLE.—The use of a steam whistle in a manufacturing establishment or gin is not a nuisance *per se*, but such whistle may be used so as to become such.

2. MUNICIPAL CORPORATIONS—USE OF STREETS—RIGHTS OF PUBLIC.—The traveling public is entitled to make free use of the streets of a city, and an adjoining property owner has no right to so use his property as unreasonably to interfere with the public enjoyment of this right.

3. NEGLIGENCE—STREETS—USE OF ADJACENT PROPERTY.—It is not negligence *per se* to own and operate near a public highway a gin or other industrial plant, in the necessary and reasonable operation of which loud noises are produced.

4. SAME—STEAM WHISTLE FRIGHTENING HORSE.—The ordinary blowing of a steam whistle at a gin situated near a city street, causing a horse to run away and inflict personal injuries, does not constitute negligence.

Appeal from Jackson Circuit Court; *Dene H. Coleman,* Judge; affirmed.

STATEMENT OF FACTS.

Appellants sued appellee to recover damages for injuries sustained by being thrown from a buggy by the horse drawing it becoming frightened at the negligent blowing of a steam whistle at the gin of appellee.

L. D. Daugherty lived about one mile east of Newport and worked in a garage in that city. On the 24th day of September, 1917, Mrs. Daugherty drove from their residence into town, in a one-horse buggy drawn by a gentle black horse, for the purpose of bringing her husband home. She was accompanied by her sixteen-months-

old infant child. On her way there and back she had to pass the gin of appellee, which was situated on Bridge Avenue in the city of Newport. The engine house of the gin was situated thirty or forty feet from the middle of the street. On her way home Mrs. Daugherty drove with her right hand and had her child in her lap. Just as the horse and buggy got opposite the engine house of appellee, the engineer gave one short blast of the whistle and the horse became frightened. Mrs. Daugherty spoke to the horse and tried to quiet him. The horse jumped to the right and ran, striking the hind wheel of the buggy against a telephone or electric light pole near the edge of the sidewalk. Mrs. Daugherty and her child were thrown headlong about ten or fifteen feet upon the concrete sidewalk. The horse stripped itself loose from the buggy and ran away. Mrs. Daugherty was painfully injured by her fall and her child was so severely injured that according to the testimony adduced by appellants it died on the 27th of November, 1917, as the result of its injuries. Other evidence tended to show that the child died of Bright's disease. The horse had been frequently driven by the gin on other occasions and had never become frightened at the noises made by the operation of the gin, or the blowing of the whistle. On the occasion in question the whistle was blown one short blast and in the ordinary way. It was an ordinary whistle and was blown in the ordinary way as if to give a signal. The accident happened about 6 o'clock in the evening, which was the usual time for quitting work at the gin. The gin had been shut down during the summer months and was being repaired preparatory for operation during the ginning season.

The court directed a verdict in favor of appellee and the case is here on appeal.

*Gustave Jones,* for appellants.

1. The question should have been submitted to a jury as to whether or not there was negligence on the part of defendant under the circumstances of this case,

and it was error to direct a verdict.   57 Ark. 429; 56 Id. 387; 98 Id. 413; 61 Id. 141-150; 49 Am. Rep. 611; 76 Me. 282; 202 Pa. 427; 170 Ind. 585; 90 Me. 313; 89 Mo. App. 192; 41 Penn. Super. Ct. 509; 110 Ark. 495, 503.

*John W. & Jos. M. Stayton,* for appellee.

The ground of negligence is that appellee "carelessly, negligently and unnecessarily sounded the whistle, when it knew, or by the exercise of ordinary care could have known, that the whistle so sounded was calculated to frighten horses on the street."

It was necessary therefore before appellee could be called upon to offer its defense for appellant to show:

1.   That appellee blew the whistle negligently and unnecessarily.

2.   That the sound was calculated to frighten horses on the street.

3.   That appellee knew or should have known in the exercise of ordinary care that the sound of the whistle was calculated to frighten horses when blown as it was on this occasion.   58 Ark. 401; 112 *Id.* 593.

### I.

It does not appear with *prima facie* force that the whistle was blown negligently or unnecessarily.

A steam whistle is not a nuisance *per se.*   1 Thompson on Neg. 1122; 38 Conn. 438; 40 *Id.* 399.

### II.

The next essential element of the burden of proof upon appellant was to show that the sound of the whistle was calculated to frighten horses.   52 N. H. 401; 76 Me. 282.   The mere showing of the accident was not a *prima facie* showing of negligence, as blowing the whistle was in the usual course of business and necessary to business.   54 Ark. 213; 56 *Id.* 387; 64 *Id.* 535.

### III.

The burden was on appellant to show that the sound of the whistle was calculated to frighten horses and was known to appellee or could have been known in the exercise of ordinary care.   Appellant having failed to make sufficient proof of any of the essential elements of his

cause of action, there was no other course for the court to take than to instruct a verdict for defendant.    Cases *supra.*

HART, J., (after stating the facts). The issue raised by the appeal is whether or not the court erred in directing a verdict for appellee.

The use of a steam whistle in a manufacturing establishment or gin is not a nuisance *per se,* but it may be used so as to become such.    Thompson on Negligence, vol. 1, par. 1261.    In the application of this principle it has been frequently held that although it is lawful for a manufacturing establishment to maintain a steam whistle, that whistle must be used with ordinary care and due regard for the rights of others, and if by the negligent use thereof horses are frightened and caused to run away and inflict injury, the owner of the establishment is liable for the resultant damages.    On the other hand, it may be said that while the traveling public is entitled to make free use of the streets of the city and that an adjoining property owner has no right to so use his property as unreasonably to interfere with the public enjoyment of this right, still the doctrine is settled that it is not negligence *per se* to own and operate, near a public highway or street, a gin or other industrial plant in the necessary and reasonable operation of which loud noises are produced.    Under modern conditions the operation of gins near a public highway or street, not only subserve the convenience of the public, but are matters of necessity. The use of the steam whistle in giving signals and for other necessary purposes in connection with operation of the plant becomes wrongful only when its use is attended with negligence.    It is true that the horse became frightened at the sound of the steam whistle and ran away throwing the occupants of the buggy with great violence on a concrete sidewalk and that he was a gentle and well broken horse; but it will not do to say that under these circumstances appellee was guilty of negligence. If we should hold that because it was impossible that a

gentle and well-broken horse should become frightened at the noise of a steam whistle of the kind ordinarily in use when used in an ordinary manner, the effect of such holding would tend to prevent gins and other plants using steam, from establishing and operating their plants in such places, and thereby greatly retard the progress and development of the country.

In the present case so far as the record discloses the whistle was blown in the ordinary way for a useful purpose in the conduct of appellee's business. Under the facts disclosed in the record the blowing of the whistle was one of the usual noises which attend the operation of a gin and to which persons traveling public highways and streets must submit. The principle is well stated in *Goodin* v. *Fuson et al.* (Ky.), 60 S. W. 293, as follows:

"Again, if the operation of the mill frightened the horse, and placed the appellant in a perilous position, and if, by stopping the mill, they could have, after discovering his peril, avoided the injury, then it was their duty to do so. It seems to us that the court properly instructed the jury. It certainly can not be said to be *per se* negligence to erect and operate a sawmill within sixty feet of a county road. If this be true, then it would be hazardous to erect any manufacturing establishment on a highway or public street, because, if a horse should become frightened, and injure some one, then the owners or proprietors would be liable in damages therefor. Some horses might become frightened at a bicycle, automobile, or a threshing machine on a public highway, and it would not do to say, because it was possible that it might become frightened thereby, it was *per se* negligence to operate them along a public highway or street. To hold that the erection of a sawmill or a manufacturing establishment near a public highway or street is *per se* negligence would be to circumscribe the business affairs of life, and retard the progress of the age. The usual noises which attend the operation of machinery in mills and manufacturing establishments situated on public highways and streets are such to which the traveling public must submit."

It follows that the judgment must be affirmed.